May it please the Court, my name is Megan Glore and I represent Mr. Mort. And if I may, I would like to reserve two minutes rebuttal time. Sure. When United wrote and sold the disability policy to Mr. Mort, it wrote the policy in a way that reflected variability in the real estate market and included a mechanism to update income annually and adjust benefits, classification and coverage. That is, whether or not the agent was entitled to continue his coverage based upon the updated income and premiums. All three of those adjustments were based upon the annual income update, which the policy expressly provides will take place in February. United could have provided a mechanism to change, to affect the change or to even perform the update at any time, but expressly chose the month of February. The monthly benefit amount is determined by basic monthly earnings. 1099? February, about when the 1099s come out. That's correct. That's correct. So that date makes sense, logically, that the update would be performed in February. The basic monthly earnings, which are determined through the February income update, in turn determines the monthly benefit amount, the classification and coverage, and the premium. In other words, basic monthly earnings is the link to all three of these monetary, if you will, provisions in the policy. But it is tied to a calendar year. I know you make much about receipt of this and that and the other, but the reality is it's tied to the two prior calendar years. And the term calendar is not at all vague. It's very, very clear. And if you take the two calendar years with your client, the second year is substantially less. You have spun an ambiguity that at least I'm going to convince me to the contrary, but I don't see an ambiguity. It's two prior calendar years. That's what happened. That's the way the district court construed it. However, the monthly benefit must be verified by premium. And in this sense, Mr. Mort did not get what he paid for. He paid the only premium Mr. Mort paid, and particularly for the month of February, the month he became disabled. The only premium he ever paid was the premium that verified the higher benefit amount. Now, the ambiguity, if to the extent there's any ambiguity, the ambiguity was United's making, because United included in the policy a provision for making changes in premiums, benefits, coverage, but did not give a precise effective date for those changes. Do you agree, counsel, if we determine that there is no ambiguity, your client loses, right? I disagree. I believe the policy is clear. The policy is clear because it provides for a day of the change, an effective day of the change, and that day of the change must reflect three things. But it relates back to the two prior calendar years. The only two prior calendar years, if I recall correctly, that are at issue here for your client, there were just two years, and I've forgotten, forgive me, 2006, 2007, something like that. Six and seven. Six and seven. And not even all of six because he --. So those were the only calendar years he worked. The argument that you make about notification and the like all relate back to the predicate of 2006 and 2007, do they not? They don't make any sense other than relating back to those two years. That's correct. The calendar years specified in the policy cannot mean ñ when the policy specifies the two prior calendar years by definition, the two prior calendar years are 2006, 2007. However, the policy right in that definition of basic monthly earnings, the policy says and verified by premium received by us. But nonetheless, it's still ñ I get your point about verification. You've explained it well in your brief. But the reality is it's still the predicate is the two prior calendar years. And if I understand your argument correctly, you want us to ignore 2007. And I ñ Correct? That's correct. And the reason that ñ and United wrote into its policy a provision that requires ignoring the prior calendar year because it provided an update provision, excuse me, a change in classification provision, a day of the change provision that ties all of these things together. The update of the payment, how the payment gets calculated, but it doesn't change what the two prior calendar years are, does it? It doesn't change the amount that Mr. Mort ñ of Mr. Mort's income in those prior two calendar years. That's correct. That's my point is that that's what I struggle with. I appreciate your client's predicament. I'm sorry for his situation. But I just ñ I'm really struggling with that basic fact. Could this have been better drafted in terms of the notification? I suppose it could have. But it still gets back to the fact that there's nothing in this case that I'm aware of that gets you around the fact that you've got to include 2007. You have to. There's no way to get around it. The ñ maybe I'm beating a dead horse. The policy ties the day of the change. The policy does not define days of change. It defines a day of the change. And United expressly ñ But forgive me. Isn't that, though, the date when there's a determination of what the premium will be? Because you don't know that until the W-2s come out and the like. But it still relates back to the prior calendar years. However, the ñ this goes back to the premium that Mr. Mort paid. United was very happy to ñ you know, accepted his premium in the higher amount and then paid him the lower amount. United did not receive a premium that verified the reduced earnings. The single premium that was automatically deducted from his pay ñ Let me ask you this. How many premiums did Mr. Mort pay altogether? I don't know the number, but he began paying premiums the first month of coverage, which was in May of 2006. Okay. And that was based upon what, an estimate of what he would earn or what? As I understand it, it was based on ñ it wasn't based on an estimate, but it was based on his earnings, the earnings that he had had from the time he commenced his employment with Redox. Okay. And was there an adjustment? Once all this occurred, are you contending that your client paid more than he was required to pay under the policy? Mr. Mort paid ñ in the month of February 2008, the month he became disabled, yes, he paid a higher premium. Okay. No, part of that premium was refunded. Okay. Well, that's my point. Thank you. On a net basis, from an actuarial basis, the insurance company refunded to him the amount that corresponded to the previously higher income amount, did it not? No. What United refunded was the premium that corresponded to the reduced, the March premium only, which was in the reduced amount. It refunded ñ it didn't refund the $50 ñ and I'm using rough numbers ñ the $50 premium. United refunded the $34 premium, recognizing ñ that the coverage had ended on March 1st. In other words, United interpreted the day of the change for the purpose of coverage to be March 1st, but determined the day of the change for the purpose of the premium amount, reflected by basic monthly earnings, at some date earlier. But at least based upon the way they treated it, it was not, in quotes, unjust. I mean, we're talking about $16 here and different. But as they understood it, they refunded to your client the portion that was not due to them. They refunded, in their eyes, the portion that was not due. They didn't refund. They did not ñ Mr. Morton never paid ñ was ñ was never refunded that ñ and I concede it's a small amount of money, but the point isn't the amount. The point is that it was United's ñ it is an admission by United, because it has never been refunded, that the coverage amount ñ it had calculated the coverage amount, the amount of the benefit, based at the higher amount, and Mr. Morton even received a notice that the change was going to be March 1st, until ñ until it came time to actually pay benefits, because Mr. Morton fell in, if you will, the convenient period for United, or the inconvenient period for Mr. Morton, between the time that United was aware of the new income, but before the date that they concede his ñ that they state his coverage changed. And, you know, going to a hypothetical that has been discussed in the briefs, there is no rational basis to treat Mr. Morton differently than someone would be ñ January 2nd or January 10th, before that income update was done. And the district court made an error, and that error was repeated in United's briefing, in stating that, well, during the elimination period, the insured, the 90-day elimination period that follows disability, the insured would be required to pay a premium, and therefore would pay a premium that reflects the reduced benefit amount. And that's inaccurate, and it was ñ it's inaccurate in Mr. Morton's case. Once the insured becomes disabled, as I'm sure you're aware, the insured is not required to pay any premium. They're only ñ the insured is only required to pay a premium if he or she wishes to continue coverage. And, in fact, United refunded Mr. Morton ñ Mr. Morton's premium for March, recognizing his coverage had terminated. Right. Mr. Morton never paid ñ never paid a premium during the 90-day elimination period and certainly never paid a premium that reflected, that verified his higher basic monthly earnings. Now ñ Let's take ñ let's take your hypothetical. Let's assume that Mr. Morton had become disabled on January 2nd of 2008 or ñ I guess what was it ñ 2008. 2008. Right. Okay. Now, if that happens, you have two calendar years, right? Would it be your position that you would not count 2007? That's correct. That's correct. And the ñ And what do you rely upon in the policy that would give you that right? What I rely on in the policy is the fact that the income update is performed in February and that classification, coverage, and the amount of the premium change on the day of the change, which is not specified ñ it's not specified as January 1st or February 1st or March 1st. There's no specific date. They necessarily have to change after the income update is done because there's no other ñ as to that date, because there's no other basis to establish those amounts. Isn't that analogous to a situation where somebody says, I owe my income tax. I have to file it by April ñ I guess the last year was 16th. I'm not going to ñ I'm going to get an extension. I'm going to pay it on September the 1st. Does that change the income that you earned in the previous year? No, but the difference in this case is that there would be no ñ if you will, there would be no consideration, if you will. In Mr. Mort's case, he paid a premium that reflected those hires. So once the adjustment was made ñ And the proportionate amount that related to the 2006 figure was refunded to him. The amount that he was charged was the amount for the 2007 amount. Isn't that correct? I'm sorry, I ñ $34. If I may have the number ñ That was ñ we'll use $34. That amount was the amount for March that was paid for March, and it was refunded. However, the amount for the month he became disabled, which was paid in the higher amount, was not. Okay. The ambiguity ñ Would you be happy if they gave you the 50 bucks? No. The ambiguity, however, was created by United because United could have specified an effective date and didn't specify an effective date. Thank you. Well, when he got the refund, that was after United was notified of the disability? Correct. And it was months later. I believe, and I can check this, but I believe it was in June. It could have been in May, but it was well after the disability was established. So someone could have, I suppose, kind of looked at this file and said, well, we'd better do something about this because his income for the first year was high, his income for the second year was low, and he did make the higher premium payment. And the way we read the contract, or the contract could be read, that he's entitled to a lower monthly payment. We don't know what happened inside the company or who looked at these figures or who made the decision to spit out the refund. No, that is not in the record, except that what I do know is that the deduction was an automatic ñ it was an automatic deduction that was made every month, but what didn't happen was there was no refunding of any portion of the February premium. It was just the March premium that was refunded, but that was an automatic deduction from his paycheck. May it please the Court, my name is William Patton. I represent the Appellee United of Omaha Life Insurance Company. The whole dispute here is the calculation of Mr. Mort's benefit, and the policy provides that the benefit under the buyout plan, which Mr. Mort elected, is 60 percent of his basic monthly earnings. Now, I thought it was interesting that Mr. Mort, in the argument here, has not even mentioned that definition of basic monthly earnings, which is the primary policy provision at issue here, and that provision provides that basic monthly earnings are the agent's average gross monthly earnings from RE-MAX during the two calendar years immediately prior to the month in which his disability began and verified by premium received by United. The policy then says that benefits are based on an agent's average gross monthly 1099 from RE-MAX earnings only from the prior two calendar years. There is no dispute in this case that that provision is unambiguous, and it can mean only one thing, and that is that a disabled agent's benefit must be based on his or her earnings from the prior two calendar years, that is, the two calendar years immediately prior to the date in which the disability began. Also, the facts are not in dispute in this case. No one disputes that Mr. Mort became disabled on February 19, 2008. Thus, under the unambiguous definition of basic monthly earnings, his benefit must be based upon his gross monthly earnings, his average gross monthly earnings from 2006 and 2007. And to ignore that provision would be contrary to basic Oregon law that any interpretation of a contract is unreasonable as a matter of law if it ignores or requires the court to ignore a provision. Mr. Patton, I'm looking at the definition section of the policy here, and at least it seems to me that the reference to the verification by premium is merely a way of verifying the amount of the earnings for the previous calendar years. Is that correct? Let me just read you the portion I'm talking about. Sure. And I'll give you some year preview. It says that basic monthly earnings means your average gross monthly 1099 received from REMAX during the prior two calendar years immediately prior to the month in which disability began and verified by premium received by us. So it seems to me that they're using the receipt of the information, the 1099 or whatever it may be. That's simply a way of verifying what that income is rather than it's self-declared by the person who owns the policy or has the policy. I think that's right. And I think the important thing to remember here is that nothing in the policy requires that there be a link between the premium received in a given month and the amount of benefit that is payable if the person becomes disabled in that month. There is nothing in this policy that requires that link. And, in fact, because of the way that premiums were calculated and recalculated under this policy, there was always a lag between the premium that would be payable in January and February and the amount of benefit that would be payable in those months if a person became disabled in January, February as happened with Mr. Mort. And that's because as of when January 1st hits, of course, no one knows exactly how much an agent has earned in the prior two calendar years. There's some time that has to pass before that information is known. That's why the policy provides for an income update in February. But if a person becomes disabled in January or February, yeah, as of that date, that precise date of disability, no one knows what they've earned, that agent has earned in the prior two calendar years. But because there is a 90-day elimination period, that information will always be known by the time benefits are payable. So in the example that's been thrown around in the briefing and here today, if an agent becomes disabled on January 2nd, then, and let's say, although this usually doesn't happen, they make a claim that day, gets to the company. They look at it and decide the person's disabled. Well, they've got to, first off, they have to satisfy a 90-day elimination period, so no decision is going to be made right then and there anyway. It's not going to be looked at until April 2nd at the very earliest. Well, by then, the agent's prior two calendar year earnings will be known. So there's nothing in the policy, as I said, that requires such a link, and it's set up in such a way that they will always be able to determine and apply that unambiguous provision that requires that the earnings be based upon, that the benefit be based on the prior two calendar year's earnings. Well, is there an example in the policy? Does the policy itself have an example? I don't believe the policy sets out a specific example of what we're just talking about. But it could be read the other way. I'm sorry? It could be read the other way to benefit the policyholder. It could be read the other way to? Benefit the policyholder. Well, actually, I respectfully disagree. I don't know how the policy, how the language requiring that benefits be based upon the agent's prior two calendar years could be read in any other way. I think the parties agree that that language is unambiguous. And so if an agent becomes disabled in any time in 2008, January 1, 2008, or December 31, 2008, the policy clearly provides that. Is there no way of figuring out what his income would have been as of a specific date prior to the receipt of the 1099? Well, until the income update is performed, until the information. But the numbers are all there. They're all there somewhere, but they have to be provided to the company, and the income update has to be performed, and that's done in February. And so there is a lag time there, but because of the 90-day elimination period and the clear language that benefits have to be based upon, the prior two calendar year earnings, it's never a problem to make that determination. As I want to talk briefly about the verified by premium language, which we've talked about a little bit, and this change in classification provision. And I think the assumption that the plaintiff is making here is that there has to be a link, that all of these things have to occur on the same day. And as I've been saying, nothing in the policy requires that. That's an assumption they're making. And, in fact, to avoid any confusion on that, the policy makes it 100 percent clear that the benefits are tethered to the prior two calendar year earnings, not to the premium paid in a given month. And I think that's an important point, because they're assuming that, well, if I pay X amount in premium in a given month, my benefit has to correspond to that amount. This policy does not provide that. And the same is true with regard to the coverage determination. Again, that determination cannot be made until the company has income information based upon the February income update. And what happened here is the company got that information and then processed it and looked at it and determined that Mr. Mort was no longer covered as of March 1. Again, that does not affect the separate and express requirement in this policy that benefits be based upon the prior two calendar years. And, again, there's no dispute his disability began on February 19, 2008. I would also add there's no dispute as to the calculation. No one disagrees that his average monthly earnings from 2006 and 2007 were $5,962, and that 60 percent of that amount is $3,577, which is what my client has been paying Mr. Mort since May of 2008 on a monthly basis. Thank you. The last point that I want to leave the Court with is that, as the Court knows, under Oregon law the primary and governing rule of the construction of insurance contracts is to ascertain the intent of the parties. And I think this policy is 100 percent clear that the intent is to provide disabled agents with a benefit based upon that agent's average gross monthly earnings from the prior two calendar years, that is the two calendar years immediately prior to the date of disability. The policy says that twice in the definition of basic monthly earnings, and it's undisputed in this case that that language is unambiguous, and also the relevant facts are not in dispute. So in light of that, I believe the district court correctly found that Mr. Mort's benefits should be based upon his 2006 and 2007 earnings. Unless the Court has any other questions, I'm finished. Thank you. Any rebuttal? Very briefly. Two points. The benefits, the benefit amount is tethered to basic monthly earnings. The benefit amount is 60 percent of basic monthly earnings. The premium is in turn tethered to the benefit amount. The premium is based upon, excuse me, to basic monthly earnings. It is based upon basic monthly earnings. The classification and coverage is based upon basic monthly earnings. All three of those determinations depend upon basic monthly earnings. United created the ambiguity in this policy. It created the ambiguity by not specifying an effective date for the changes. Mr. Mort only paid a premium that verified basic monthly earnings of a higher amount. He never paid a premium that verified reduced basic monthly earnings. And 11 days before he became disabled, his agent, the policy agent, confirmed his coverage, confirming that to the extent this policy can be interpreted in several ways, even the agent understood that it would be interpreted in the way Mr. Mort has suggested. One quick question. Before the district court, did you take the position that the policy was ambiguous? We took the position the policy was clear, but if it was ambiguous, it should be construed in the district. It would have to be construed in Mr. Mort. That's almost metaphysical. Is it or is it not? I believe it's clear. It is clear. Okay. If it's clear, doesn't Oregon law end it right there because all you look at is the intent of the parties? And if it's clear, then it's done, right? I don't believe so because the benefit amount must be verified by premium. And Mr. Mort's benefit amount was never verified by the premium he paid. Excuse me, the benefit amount United paid. Thank you. All right. Thank you. Thank you. That matter is submitted.
judges: Goodwin, Pregerson, M Smith, Cjj